UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| DR. ANN McALLISTER OLIVARIUS, | * | |
| Plaintiff, | * | |
| v | * | Civil Action No.: |
| | | 1:05-CV-00717-JFM |
| DR. DANIEL FRIEDMAN, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

Defendants Dr. Daniel Friedman, Dr. Joanne Ingwall, William Donelan, Dr. Richard Page, Karen Savransky, and Dana Boyd (the "Sarnoff Defendants"), by counsel, submit this memorandum in support of their Motion for Sanctions[1] against Plaintiff Ann Olivarius ("Plaintiff"), and her counsel, James D. McCarthy, of the firm Diamond McCarthy Taylor Finley Bryant & Lee, LLP.

## PRELIMINARY STATEMENT

The Complaint in this matter contained allegations and claims for relief that Plaintiff has tried unsuccessfully to assert multiple times over the last decade. Prior to filing the Complaint, Plaintiff and her counsel knew that these allegations: (1) were time-barred; (2) were not warranted by existing law; (3) lacked factual support; (4) were filed for an improper or frivolous

---

[1] Although this ill-fated case has finally been dismissed with prejudice, the conduct of the Plaintiff and her counsel is so egregious that given her history of pursuing these stale claims and harassing the Sarnoff Defendants, and the very substantial likelihood of further such attempts, sanctions are justified in this case.

purpose; and (5) evinced a failure to conduct a reasonable pre-filing inquiry. To make matters worse, Plaintiff has engaged in a campaign to harass the Sarnoff Defendants by circulating the false and malicious allegations presumably in part to gain an advantage in this litigation. Among other things,

- Plaintiff, while visiting a colleague in Boston,[2] fabricated and forwarded "anonymous" e-mails and documents to the Sarnoff Defendants to appear as though they were created by concerned Endowment fellows;

- Plaintiff surreptitiously arranged for another colleague to attend and disrupt the Endowment's 2005 Annual Meeting to seek information about the Sarnoff Defendants, the Endowment, as well as others affiliated with the Endowment; and

- Plaintiff brazenly concocted a scheme for two other colleagues to circulate malicious flyers about the Sarnoff Defendants at the 2005 Annual Meeting and to the home of the Endowment founder's widow suggesting that the contents were sponsored by Guidestar[3] when indeed they were not.

For the reasons set forth below, this Court should exercise its inherent powers as well as the provisions of 28 U.S.C. § 1927 to impose monetary sanctions against Plaintiff and her counsel and to further restrict them from filing such claims in yet another forum or engaging in a pattern of harassment of the defendants in the future.

## BACKGROUND

1.      Between 1992 and June 21, 1996, Plaintiff, a Yale Law School graduate with experience at a New York law firm, served as the president, chief executive officer and general

---

[2]     Plaintiff resides in London.

[3]     Guidestar (www.guidestar.org) is a leading source of information about non-profits.

counsel of the Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc. (the "Endowment"), a 501(c)(3) charity in Great Falls, Virginia.

2.   On June 21, 1996, Plaintiff was terminated for cause, for, among other things, lying to the Board of Directors of the Endowment and breaching her fiduciary duties to the non-profit organization.

3.   On or about June 26, 1996, the Plaintiff filed for arbitration with the Endowment, claiming she suffered economic business damages and damage for injury to her reputation as a result of her alleged wrongful termination from the Endowment. (Compl., ¶266).

4.   On or about July 6, 1996, the Plaintiff sent a letter to certain Board members concerning the Endowment's decision to fire her for cause. (A copy of the letter is attached as Ex. "1"). In this letter, the Plaintiff stated, among other things: "I know now that David Freishtat [the Endowment's outside litigation counsel] did not give you a true picture of the facts before you decided to fire me." (Ex. "1", p. 1).

5.   On August 12, 1998, the arbitrator issued his Opinion and Award, concluding that the Endowment was justified in terminating the Plaintiff for cause. (Ex. "2", p. 66).

6.   In his Opinion, the arbitrator stated in pertinent part:

> "Specifically, I conclude that Claimant [Olivarius] attempted to conceal from the Board material information relating to the actions proposed in the Agenda for the June 7, 1996 Board meeting; attempted to deprive the Board of the advice of its counsel on the actions proposed; intentionally altered the Agenda forwarded to [Freishtat] to prevent [Freishtat] from participating in and providing advice to the Board at the June 7, 1996 Board meeting; concealed material information from the Board relating to the risks and possible adverse consequences to the Endowment of Claimant's assertion of counterclaims in the New York action; deceived the

> Board by advising it during the Board meeting that [Freishtat] did not wish to be present at the Board meeting due to a 'conflict'; and attempted to conceal from [Freishtat] that she intended to present to the Board for approval resolutions which would enable her to obtain indemnification and, at she and her counsel's discretion, assert counterclaims in the New York action. Those actions breached Claimant's fiduciary obligations to the Endowment and constituted, as indicated, prohibited conflicts of interest. I conclude that the Endowment had ample cause for the termination of Claimant and that it properly terminated Claimant pursuant to the resolutions unanimously adopted by the Board on June 20, 1996."

(Ex. "2", pp. 54-55).

7. In his Award, Arbitrator Vaughn concluded, in pertinent part:

> "Respondent The Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc. proved that the termination of Claimant Ann McAllister Olivarius was for cause, within the meaning of the Agreement. Claimant shall not be awarded compensation or damages as a result of her termination. Claimant's reputation was not damaged as a result of Respondent's actions terminating her or as a result of Respondent's alleged publication of the termination and reasons therefore. Claimant shall not be awarded compensation from Respondent for damage to her reputation."

(Ex. "2", p. 65).

8. On November 16, 1998, the Plaintiff filed with the Superior Court of the District of Columbia pleadings that the Court construed as a Motion to Vacate the Arbitration Award. (Docket sheet from the Superior Court of the District of Columbia in *Olivarius v. Stanley J. Sarnoff*, attached as Ex. "3", p. 2; Compl. ¶299).

9. On November 20, 1998, the Endowment filed an action to confirm the arbitration award. (Ex. "3", p. 2; Compl. ¶299.)

10. On December 14, 1999, the Superior Court of the District of Columbia entered an Order granting the Endowment's motion to confirm the arbitration award and denying the Plaintiff's request to vacate the award. (Ex. "3", p. 3; Compl. ¶299).

11. On April 13, 2001, the Plaintiff filed in the Superior Court for the District of Columbia a motion and petition to vacate in part arbitration award, alleging that the Endowment withheld from her and the arbitrator material documents that would have exonerated her and thus "the arbitration award was procured by fraud, corruption and other undue means." (Ex. "3", p. 3). In her motion, the Plaintiff alleges that she first discovered that the Endowment had concealed multiple documents during the course of the arbitration that would have exonerated her on March 15, 2001. (Compl., ¶288, 307, 315, 320; Ex. "4").

12. On March 21, 2002, the Superior Court for the District of Columbia entered an Order denying the Plaintiff's motion and petition to vacate in part arbitration award. (*See* Ex. "4"). In reaching its decision, the Court concluded that the allegedly concealed documents were available to the Plaintiff as of May 2000. (Ex. "4", p. 1.)

13. After the Plaintiff filed a Motion for Reconsideration, the Superior Court for the District of Columbia on June 11, 2002 entered another Order reaffirming its earlier decision to deny modification of the arbitration award. (Ex. "5"). Specifically, the Court found that the Plaintiff "was on inquiry notice of the allegedly concealed documents, particularly the June 6 facsimile, by no later than May 16, 1998, the final day of the arbitration hearings." (Ex. "5", p. 2).

14. Subsequently, the Plaintiff filed an appeal to the District of Columbia Court of Appeals, challenging the Superior Court's denial of her Motion and Petition to Vacate in part

Arbitration Award, and the Court of Appeals, in an Opinion dated September 9, 2004, affirmed that denial. (Ex. "6").

15. The Plaintiff filed a Petition for Rehearing, which was denied in an Order dated March 21, 2005. (Docket entries of the District of Columbia Court of Appeals, attached hereto as Ex. "7", p. 8.).

16. On March 15, 2005, nearly a decade after she was terminated for cause, Plaintiff filed this action against the Sarnoff Defendants and the Freishstat Defendants whom she claimed were responsible for her termination.

17. Prior to filing responsive pleadings, counsel for the Sarnoff Defendants and counsel for the Freishstat Defendants separately contacted Plaintiff's counsel to request dismissal of the stale and improper complaint in its entirety. Plaintiff did not dismiss her claims.

18. The Freishstat Defendants[4] filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment on May 26, 2005, seeking dismissal of the Complaint on the grounds that all of the claims alleged therein are barred by the applicable statutes of limitation because Plaintiff's stale claims relate to events that occurred between 1995 and 1998.

19. The Sarnoff Defendants, whose responsive pleading was not due until July 1, 2005, served a Motion for Sanctions pursuant to Fed. R. Civ. P. 11 upon the Plaintiff's counsel

---

[4] Defendants Freishtat, Burke, Mullen and Dubnow, LLC, David Freishtat, and Stacie Dubnow are hereafter referred to as the "Freishtat Defendants."

on June 7, 2005. The Sarnoff Defendants' Motion for Rule 11 Sanctions is attached hereto as Exhibit "8."[5]

20.     On June 7, 2005, the Plaintiff voluntarily dismissed with prejudice all claims against all defendants by filing a Stipulation of Dismissal signed by counsel for the Plaintiff and counsel for the Freishtat Defendants.

21.     While the frivolous pleading has been dismissed, the Sarnoff Defendants have been saddled with litigation costs as a direct result of the improper action. Moreover, using the complaint as an excuse and a prop, Plaintiff waged a war inside and outside the courthouse to tarnish the image of the Endowment and its representatives. Therefore, Plaintiff should not only reimburse the Sarnoff Defendants for their costs and attorneys' fees, but Plaintiff should be enjoined from further frivolous litigation on the underlying facts and should be restricted from further defamation and misrepresentation designed solely to harass, embarrass, and/or injure the defendants.

## ARGUMENT

### I.    PLAINTIFF AND HER COUNSEL SHOULD BE SANCTIONED FOR FILING THE COMPLAINT.

In their proposed Motion to Dismiss attached as Exhibit "A" to the June 7, 2005 Motion for Rule 11 Sanctions, the Sarnoff Defendants set forth in great detail the sanctionable conduct of the Plaintiff and her counsel, including:

---

[5]     Although the Sarnoff Defendants served a Rule 11 Motion for Sanctions upon the Plaintiff and her counsel, Rule 11 is likely inapplicable in this case because the Complaint was dismissed prior to the filing of the motion. However, in light of the facts and the egregious multiplicity of meritless litigation, sanctions are warranted in some fashion.

- Statute of Limitations: This case stems from Plaintiff's termination for cause from her non-profit employer in 1996, nearly a decade ago. The injuries Plaintiff now seeks to redress were allegedly suffered between 1996 and 1998. *See* Compl. at 8, 54-56. Even if Plaintiff's claims were factually valid (which they are not), the claims asserted (RICO, Defamation, Tortious Interference, Civil Conspiracy, Negligent Misrepresentation, and Common Law Fraud) carry a maximum statute of limitations of four (4) years, and in the case of defamation, one (1) year. Upon even the most cursory pre-filing inquiry (and certainly upon a mandatory reasonable inquiry), one would discover that the claims are statutorily barred on their face by at least five (5) years.

- Collateral Estoppel: The claims asserted in the Complaint stem from the same operative set of facts previously litigated unsuccessfully by Plaintiff in front of an arbitrator and two courts: (1) a 1996 arbitration (in which the arbitrator held that the Plaintiff concealed information from and/or fabricated a document to harm the Sarnoff Endowment Board, was terminated for cause, and suffered no harm to her reputation); (2) a 1999 District of Columbia Superior Court lawsuit (in which the judge upheld the arbitrator's decision and denied additional relief to the Plaintiff as untimely); and (3) a subsequent appeal to the District of Columbia Court of Appeals (again holding Plaintiff's claims untimely and refusing to grant Plaintiff relief from the arbitrator's decision that she was properly terminated for cause in 1996). *Olivarius v. Sarnoff*, 858 A.2d 457 (D.C. App. 2004). Plaintiff is therefore barred under the principles of collateral estoppel from relitigating issues which have already been decided in multiple fora. That Plaintiff and her counsel nevertheless filed the Complaint in the face of obvious legal barriers calls into question the purpose of the Complaint.

- Insupportable Claims: Nor are the Plaintiff's claims supportable under the law of this Circuit. For example, RICO claims, which Plaintiff uses as justification for federal jurisdiction, fail in the Fourth Circuit when based on allegations of isolated acts of common fraud targeted at a limited group of plaintiffs. *See Friedler v. Cole*, No. CCB-04-1983, 2005 U.S. Dist. LEXIS 2994, *36-40 (D. Md., Feb. 25, 2005). Plaintiff and her counsel should have known of the fatally flawed claims upon a reasonable pre-filing inquiry.

The decision by the Plaintiff and her counsel to proceed with the litigation despite these legal deficiencies constitutes sufficient grounds for sanctions. Their action was taken with full knowledge that these issues, even if not stale and otherwise supportable, had already been addressed by an arbitrator and two courts.

### A. This Court Should Exercise Its Inherent Equitable Powers To Sanction Plaintiff And Her Counsel.

The American rule requires that each litigant must pay its own attorney's fees and costs, absent explicit Congressional authorization to the contrary. *Davis v. Target Stores Div. of Dayton Hudson Corp.*, 87 F. Supp. 2d 492, 494 (D. Md. 2000). The rule is subject to bad-faith and other exceptions, and the Fourth Circuit recognizes four such exceptions to the American rule where the court may use its inherent powers to sanction a party for costs or attorneys' fees. One such exception is "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[6] *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991).

Although imposing fees under the bad-faith rationale is rare (*Colbert v. Yadkin Valley Tel. Membership Corp.*, 960 F. Supp. 84, 86 (M.D. N.C. 1997)), Fourth Circuit courts recognize that the continuation of litigation of claims which have become frivolous amounts to bad faith. *Davis*, 87 F. Supp. 2d at 494. A claim is frivolous if "a plaintiff presents no evidence to support his claims or if he has gone forward on the basis of no colorable legal theory." *Id.* When bad faith is found, the court may use its inherent powers to sanction either the party or the counsel responsible for the conduct. *Alyeska Pipeline Serv. V. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

Case law holds that the amount of the fee award is within the court's discretion. *Davis*, 87 F. Supp. 2d at 495. Fee calculations normally begin by multiplying "the hours reasonably

---

[6] The other two exceptions recognized by the Supreme Court are only applicable in common fund cases or where a party willfully disobeys a court order. *Chambers*, 501 U.S. at 45. The fourth exception, created by the Fourth Circuit, only applies to suits in equity. "The Fourth Circuit also has recognized an 'essential to equity' exception that may apply in exceptional circumstances." *Kreischer v. Kerrison Dry Goods Co.*, Nos. 99-1966, 99-1985, 2000 WL 1157805, at *3 (4th Cir. Aug. 16, 2000) [unpublished] *discussing, Rolax v. Atl. Coast Line Rail Co.*, 186 F.2d 473, 481 (4th Cir. 1951).


expended by the prevailing party's counsel [] by a lodestar rate." *Id.* Then, when the defendant is awarded the costs, "the Court may adjust this figure upward or downward to accommodate Plaintiff's financial condition, his motive in bringing the lawsuit, and the frivolousness of the case." *Id.* Courts thus have a large amount of flexibility in determining the size of sanctions, and may consider a wide range of factors.[7]

In *Davis*, the court awarded sanctions based on the bad-faith exception to the American rule because the plaintiff should have known after discovery closed that his claim was no longer viable and had therefore "morphed from an arguably appropriate one into vexatious prosecution." *Id.* Davis had brought an age discrimination claim against Target following his being fired, but it became clear in discovery that the allegations lacked merit. The court found that plaintiff's insistence in continuing with the claim was enough to warrant sanctions for bad-faith litigation. *Id.*

> In *Colbert*, another employment discrimination case, the court observed:
>
> On the other hand, continuing to pursue doomed litigation after the defects have been explained in a court opinion is not conduct based on subtle, factual or legal niceties which a layman would not be in a position to appreciate. Whether the Court applies *Hughes* to the *Christiansburg* test, *Margquart*, or the bad faith exception to the American Rule, the result is the same. Attorneys' fees may be assessed against a *pro se* plaintiff because he continued litigation of this matter after the deficiencies of his claim became clear in the Court's Order and Judgment.

*Colbert*, 960 F. Supp. at 87. Thus, in *Colbert*, the plaintiff was sanctioned after he continued to litigate a claim which had already been rejected by a court. *Id.*

---

[7] At the Court's request, the Sarnoff Defendants will submit evidence of their legal expenses in camera.

In this case, prior to filing this action, the Plaintiff and her counsel were well aware of the deficiencies in the claims as a result of the arbitrator's, D.C. Superior Court's, and D.C. Court of Appeals' decisions. In fact, any objective reading of the Complaint puts one on notice of serious deficiencies. By refiling essentially the same claims in federal court that failed in DC Superior Court and the DC Court of Appeals, Plaintiff and her counsel were simply perpetuating Plaintiff's "doomed" litigation after the defects had been explained in a court opinion. *Colbert*, 960 F. Supp. at 87. That the court in *Colbert* would sanction a *pro se* plaintiff for not withdrawing his complaint when he should have realized the claim was doomed applies with greater force when a Yale Law School graduate and her counsel file complaints, meant only to harass. Plaintiff's claims were doomed from the start, which is presumably why the Plaintiff ultimately dismissed them with prejudice after repeated demands to do so. In other words, the voluntary dismissal is more evidence of Olivarius' knowledge of the vexatious nature of her claims. In the normal course, Rule 11 is designed to encourage the withdrawal of a sanctionable pleading. In this case, the Complaint was ultimately withdrawn only after the threat sanctions. No new facts were brought to light, nor was any new law created in the interim. Instead, it was only after the Plaintiff had sent copies to members of the scientific community and had undertaken numerous other activities that could only have been designed to harass did the lawyers for the Plaintiff begin to withdraw resulting in Plaintiff's dismissal. *See* Declaration of Karen Savransky, counsel for the Endowment, attached hereto as Exhibit "9."

Moreover, it is clear that the filing of the frivolous complaint was merely part of a larger pattern of harassment. As if the filing of the Complaint were not enough, Plaintiff engaged in a vexatious pattern of behavior indicative of only one purpose. *See* Declaration of Karen Savransky, Director of Legal Affairs for the Endowment, attached hereto as Exhibit "9." As set

forth in the Savransky Declaration: (1) Plaintiff meticulously orchestrated disruptions at the Endowment's Annual Meeting by having her colleagues attend with sinister motives; (2) Plaintiff attempted to cause further disruption by fabricating "anonymous" e-mails[8] and documents pruportedly from Endowment fellows when in actuality, her actions have been traced to Plaintiff while she was visiting a colleague in Boston; and (3) Plaintiff directly and indirectly has caused great loss and disruption to the defendants and must be stopped.

The related activities of the Plaintiff not only reflect the concerted activity in which she engaged, but also the extent of the disruption and harm caused to the Endowment by her activities. Any award of sanctions should account for this harm and disruption both inside the court and out.

### B.    This Court Should Sanction Plaintiff And Her Counsel Pursuant To 28 U.S.C. § 1927.

This Court may also impose sanctions against either Plaintiff or her attorneys pursuant to 28 U.S.C. § 1927, which states: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Congress enacted Section 1927 in 1813 following an inquiry by a Senate Committee appointed to "inquire what Legislative provision is necessary to prevent multiplicity of suits or processes, where a single suit or process might suffice. . . ." *Roadway Express, Inc.*, 447 U.S. at 759, *quoting* 26 Annals of Cong. 29 (1813). The statute was prompted by the practices of certain

---

[8]    Plaintiff, a Yale Law School graduate, posed as a "Harvard alum" in one of her fabricated e-mails.

attorneys who "apparently had filed unnecessary lawsuits to inflate their compensation." *Id.* at 759 n.5 (internal citations omitted), *citing* H.R. 25, 27th Cong. at 21-22 (3d Sess. 1842).1842).

The statute addresses solely abuses of the court system, and requires a finding of bad faith. *Chaudhry v. Gallerizzo*, 175 F.3d 394, 411 n.14 (4th Cir. 1999); *Baltimore Luggage Co. v. Samsonite Corp.*, No. WN-86-503, 1991 WL 307244 at *3 (D. Md., June 25, 1991). At least one district court in the Fourth Circuit has stated that such sanctions are warranted if the attorney's conduct "manifests either intentional or reckless disregard of the attorney's duties to the court." *Higginbotham*, 202 F.R.D. at 459, *quoting Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 265 (10th Cir. 1995).

Although the statute speaks of attorneys who multiply proceedings, Plaintiff, a Yale-educated lawyer who apparently drafted the Complaint, should be sanctioned as well as her counsel of record. Indeed, her current letterhead boasts that she is still a practicing lawyer. Section 1927 applies to "any attorney or other person admitted to conduct cases in any court of the United States" and contains no language limiting who may be sanctioned to only the attorneys of record. Indeed, Plaintiff ("any attorney") has "multiplie[d] the proceedings" (by refiling essentially the same claims from almost ten years ago) in an "unreasonabl[e] and vexatious" manner. In any event, if it truly was the original intent of the legislature in crafting this statute to prevent attorneys from profiting by multiplying claims, then application of § 1927 against the Plaintiff is even more appropriate. This is especially true considering Plaintiff's apparent role in representing herself. *See* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* 379 (3d ed. 2000) ("If a pro se litigant is a lawyer, the statute applies.").

In *Williams*, the court used section 1927 and its inherent powers to sanction the plaintiff's attorney for refusing to agree to a stipulation to dismiss after he learned that his client already had the same claim litigated in a class-action suit. *Williams*, 327 F. Supp. 2d at 585. The court found the attorney's refusal to dismiss and continuation of the litigation after learning about the pending class action was an act that multiplied litigation in bad faith and sanctionable though the attorney had only filed one complaint himself. *Id.* at 585-86. Here, Plaintiff's counsel, unless grossly negligent in his duties, i.e., reading the Complaint prior to filing, must have been aware of the previous round of litigation regarding the same claims now asserted. The Plaintiff's previous litigation of these same issues is analogous to the ongoing class action in *Williams*, and thus, this Court should find that Plaintiff and her counsel should be sanctioned pursuant to section 1927 for fees and costs from the moment they filed her latest claim.

### C. In Addition To Monetary Sanctions, This Court Should Also Impose A Sanction That Plaintiff Be Enjoined From Pursuing Future Litigation And Harassing Behavior Against the Endowment And The Defendants.

It is "well settled that a court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Urban v. United Nations*, 768 F. 2d 1497, 1500 (D.C. Cir. 1985). The Second Circuit has recognized that it is well within the federal courts' constitutional function to protect litigants from vexatious litigation;

> [t]he United States Courts are not powerless to protect the public, including litigants . . . form the depredations of those . . . who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings.

*Martin-Trigona v. Lavien, et. al.*, 737 F.2d 1254, 1262 (2nd Cir. 1984) (upholding district court's injunction against pro se litigant who continuously filed multiple complaints over a series of

years), *quoting In Re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir. 1981), *cert. denied*, 455 U.S. 1018 (1982).

Furthermore, the Fourth Circuit has found that "[u]ndoubtedly, the All Writs Act, 28 U.S.C. § 1651(a), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants." *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). The Fourth Circuit listed four factors to consider when deciding whether to issue a prefiling injunction:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Cromer*, 390 F.3d at 818. Once a federal court issues an injunction under the All Writs Act, it may be applied to prevent state court litigation if it falls within an exception to the Anti-Injunction Act. *Payman v. Lee County Community Hosp.*, No. 2:04CV00017, 2005 WL 1322897, at *3 (W.D. Va., June 3, 2005). The only exception in the act applicable here is the third, where "an injunction is necessary to 'protect or effectuate [the court's] judgments.'" *Id.*, *citing* 28 U.S.C.A. § 2283 (West 1994). This exception is meant to prevent state courts from relitigating issues already decided in state courts. *Id.*, *quoting Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

First, the Plaintiff's current allegations are nearly identical to allegations previously litigated over the last decade and appear to have been filed solely to harass. Second, based on Plaintiff's pattern of behavior, and given the knowledge she must have had regarding her likelihood of success and how she grudgingly dismissed the claims with prejudice, it appears as

if there was no good-faith basis for her to pursue the litigation. An injunction should issue to prevent a further burden on another court system. Plaintiff should be enjoined from any further suits and harassment against the Endowment, its current, past, or future board members, preceptors, fellows, employees, agents, or affiliates for anything in any way related to her prior employment, termination, or subsequent litigation.

## Conclusion

Recognizing the unique nature of both the facts of this motion and the relief sought, Defendants Dr. Daniel Friedman, Dr. Joanne Ingwall, William Donelan, Dr. Richard Page, Karen Savransky, and Dana Boyd respectfully request that this Court grant their Motion for Sanctions, and impose as a penalty Defendants' reasonable attorneys' fees, enjoin Plaintiff from further litigation and harassment against the Endowment, its current, past, or future board members, preceptors, fellows, employees, agents, or affiliates based upon the allegation raised in this action, and grant such other sanctions the Court may deem necessary and appropriate.[9] Given the serious nature of the issues, the Sarnoff Defendants respectfully request a hearing on this motion. Should the Court require it, copies of the legal bills from counsel will be available for review by the Court either at the hearing or thereafter at the Court's option.

---

[9] The Sarnoff Defendants specifically reserve the right to seek conpensatory and other damages for, among other things, per se defamatory remarks circulated by the Plaintiff.

DR. DANIEL FRIEDMAN
DR. JOANNE INGWALL
WILLIAM DONELAN
DR. RICHARD PAGE
KAREN SAVRANSKY
DANA BOYD

By Counsel

_____/s/_____
Rodney H. Glover (MD Bar No. 07780)
Attison L. Barnes, III (MD Bar No.15198)
WILEY REIN & FIELDING LLP
1776 K Street, N.W.
Washington, DC  20006
(202) 719-7000
*Counsel for Daniel Friedman, Joanne Ingwall, William Donelan, Richard Page, Karen Savranskyand Dana Boyd*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of July, 2005 a copy of the foregoing Motion for Sanctions was sent by U.S. mail first class, postage prepaid, to:

>James D. McCarthy, Esquire
>Diamond, McCarthy, Taylor, Finley, Bryant & Lee, LLP
>1201 Elm Street, Suite #3400
>Dallas, Texas 75270
>*Attorneys for Plaintiff*
>
>Andrew D. Levy, Esquire
>Brown, Goldstein & Levy, LLP
>120 East Baltimore Street, Suite 1700
>Baltimore, MD 21202
>*Attorneys for Plaintiff*
>
>Alvin I. Frederick, Esquire
>James E. Dickerman, Esquire
>Eccleston & Wolf, P.C.
>7th floor – Scarlett Place
>729 East Pratt Street
>Baltimore, Maryland 21202

>/s/
>Attison L. Barnes, III

WRFMAIN 12347954.5
DRAFT

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

DR. ANN McALLISTER OLIVARIUS,       *

        Plaintiff,       *

v       *   Civil Action No.: 1:05-CV-00717-JFM

DR. DANIEL FRIEDMAN, et al.,       *

        Defendants.       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## INDEX OF EXHIBITS

EXHIBIT 1: July 6, 1996 Dr. Ann McAllister Olivarius' letter to the Board of the Stanley J. Sarnoff Foundation

EXHIBIT 2: August 12, 1998 Arbitrator's Opinion and Award in *Olivarius v. The Stanley J. Sarnoff Foundation*

EXHIBIT 3: Docket entries from the Superior Court of the District of Columbia in *Olivarius v. The Stanley J. Sarnoff Foundation*

EXHIBIT 4: March 21, 2002 Order of the Superior Court for the District of Columbia in *Olivarius v. The Stanley J. Sarnoff Foundation*

EXHIBIT 5: June 11, 2002 Order of the Superior Court for the District of Columbia in *Olivarius v. The Stanley J. Sarnoff Foundation*

EXHIBIT 6: September 9, 2004 District Court of Appeals decision in *Anne McAllister Olivarius v. The Stanley J. Sarnoff Endowment for Cardiovascular Schience, Inc.*

EXHIBIT 7: Docket entries from the District of Columbia Court of Appeals in *Olivarius v. The Stanley J. Sarnoff Foundation*

EXHIBIT 8: June 7, 2005 Sarnoff Defendants' Motion for Rule 11 Sanctions

EXHIBIT 9: June 30, 2005 Declaration of Karen Savransky