UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| Dr. ANNE MCALLISTER OLIVARIUS | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.   1:05-cv-00717-JMF |
| DR. DANIEL FRIEDMAN, et al. | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS FREISHTAT, BURKE, MULLEN & DUBNOW, LLC, DAVID FREISHTAT AND STACIE F. DUBNOW'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER**

Defendants Freishtat, Burke, Mullen & Dubnow, LLC, David Freishtat and Stacie F. Dubnow (collectively "Freishtat"), by their attorneys, Alvin I. Frederick, James E. Dickerman and Eccleston and Wolf, P.C., hereby submit this Memorandum of Law in support of their Motion for Sanctions pursuant to Rule 11 to the Federal Rules of Civil Procedure, 28 U.S.C. §1927 and the Court's inherent power.

**INTRODUCTION**

The entry of sanctions against the Plaintiff and her counsel are warranted, although the Complaint was ultimately voluntarily dismissed, because the belated dismissal did not rectify the damage caused by the filing of a Complaint, which was not only patently legally deficit, but also contained unnecessary, scandalous and demonstratively false statements about well regarded members of the community, which were well beyond the bounds of legitimate advocacy. Furthermore, the Plaintiff's inability to perform the simple task of dismissing the lawsuit within a reasonable timeframe, or to communicate with undersigned counsel in a rational and timely

manner, caused Freishtat to incur significant expense in defense of this obviously frivolous lawsuit.

Specifically, the Complaint filed by the Plaintiff against Freishtat violates virtually every tenant of decency, professionalism, ethical responsibility and the Federal Rules.  Few courts have likely seen as an egregious abdication of professional responsibility and a clearer case requiring both non-monetary and monetary sanctions. Every substantive fact alleged by the Plaintiff in the Complaint had been judicially resolved adversely to her in a twelve-day arbitration proceeding, two DC Superior Court decisions and a decision from the DC Court of Appeals.  These four decisions established beyond all doubt that the Plaintiff's factual assertions are false and that all claims are barred by the application of the various statutes of limitations, by *res judicata* and collateral estoppel.[1]

Any attorney who read the Complaint was necessarily aware of the Complaint's fatal infirmities and its gross impropriety.  If an attorney signed the Complaint without having read it, he is as culpable as an attorney who signed a complaint that is impermissible under the Federal Rules. The Complaint overflows with irrelevant, blasphemous and scandalous allegations not only against Freishtat but against a host of talented and dedicated physicians and professional employees of the Sarnoff Endowment for Cardiovascular Research.

Rule 11 is designed for the purpose of deterring this very conduct and to compensate the victims of parties and attorneys who violate its tenants.  The Plaintiff and her attorney should not be able to avoid taking responsibility for the consequences of their reckless and unprofessional actions by simply dismissing the lawsuit.  Instead, the Court should order them to reimburse

---

[1]   The 67-page arbitration decision and the three judicial decisions that flow from it are repeatedly referred to in the Complaint.  It therefore must be presumed that the Plaintiff's counsel read those decisions before signing and filing the Complaint.  Notwithstanding, the filed Complaint asserts the identical legal and factual positions that were specifically and  repeatedly rejected by the arbitrator and the District of Columbia courts.

Freishtat for the very real costs that were incurred on response to the actions of the Plaintiff and her attorney.  The entry of sanctions will fulfill the dual purpose of compensating Freishtat for the costs that were incurred and of deterring the Plaintiff, her attorney, and other like-minded individuals from abusing the Court system in this manner.

## PROCEDURAL BACKGROUND[2]

1. After receiving notice that a Complaint had been filed against them, Freishtat reviewed the Complaint prior to service of the Complaint. Due to the scandalous allegations in the Complaint and the fact that the allegations clearly conflicted with the prior judicial decisions cited in the Complaint, and, on its face, was obviously barred by the applicable statue of limitations, Freishtat, on April 4, 2005, through undersigned Counsel sent a letter to the Plaintiff's counsel of record, Martin S. Himeles, Jr. and James D. McCarthy setting forth the factual and legal deficiencies in the Complaint.  See Exhibit 1.  The letter requested that lawsuit be dismissed by April 24, 2005 and indicated that if the Complaint was not dismissed, a Rule 11 motion for sanctions would be filed.

2. In response to the April 4th letter, Mr. Himeles indicated that he was moving to withdraw his appearance.  The Court, on April 5, 2005 granted the Motion, leaving Mr. McCarthy, who is not licensed to practice in this Court, as the only attorney remaining in the case on behalf the Plaintiff.[3]

---

[2] The factual background of this matter is set forth in detail in Freishtat's Memorandum of Law in Support of the Motion to Dismiss, or in the alternative, Motion for Summary Judgment that was previously filed and is incorporated by reference as if fully stated herein.

[3] Since Mr. Himeles immediately withdrew his appearance, Freishtat is not seeking sanctions from him, despite the fact that his signing his name to such an outrageous and obviously frivolous lawsuit did constitute sanctionable conduct.

3.      Mr. McCarthy's partner, Greg Taylor responded to the April 4th letter by indicating that Mr. McCarthy was in the hospital and requested Freishtat refrain from filing any motions until May 16th. See Exhibit 2.

4.      Despite Freishtat's concern that the Complaint, containing scandalous allegations, would continue to remain unresponded to in the Court file, due mainly to Mr. Taylor's representation that Mr. McCarthy was hospitalized, Freishtat agreed to not file anything prior to May 16th. See Exhibit 3. Freishtat, did, however, advise that he would begin work on the Motions during the week of May 10th, so the Motions would be ready to be filed on May 16th.[4]

5.      The next communication received by Freishtat from Mr. McCarthy was an email dated May 9th in which he inquires as to whether undersigned Counsel would accept service on behalf of their clients. See Exhibit 5.[5]

6.      Undersigned Counsel responded that they would accept service and, as promised, commenced working on a motion to dismiss, or in the alternative, motion for summary judgment.

7.      Undersigned Counsel then received an email dated May 14th (a Saturday), which was not reviewed until Monday, May 16th, from Mr. McCarthy that inquired if undersigned Counsel would be available by phone on Monday to "talk about this case before escalating matters further." Exhibit 6.

---

[4]  Despite Mr. McCarthy's apparent hospitalization, he was able to participate in other aspects of this case as evidenced by his April 24, 2005 letter, attached hereto as Exhibit 4.

[5]  Freishtat reasonably understood Mr. McCarthy's request as an indication that the Plaintiff intended to proceed with the case despite its obvious flaws and the threat of sanctions set forth in the April 4th letter set to Plaintiff's counsel (Exhibit 1).

8. Following a telephone conversation on Monday, May 16th, undersigned Counsel received a email dated May 16th (8:13 p.m.) indicating that the Plaintiff had decided to dismiss the case with prejudice as to Freishtat and promising that tomorrow (May 17th) he "would file a voluntary dismissal (with prejudice), pursuant to Fed. R. Civ. P. 41." Exhibit 7.

9. Apparently, Mr. McCarthy attempted to have the Notice of Voluntary Dismissal filed, but it was rejected by the Clerk because it was not signed by an attorney licensed to practice in the Court. Accordingly, Mr. McCarthy requested that undersigned counsel file it. See Exhibit 8. After explaining to Mr. McCarthy that undersigned counsel could not file a Notice of Voluntary Dismissal on behalf of the Plaintiff, undersigned counsel contacted the Clerk's office and discovered that the Court would accept the dismissal notice if the Plaintiff filed in *pro se*. In an email dated May 20th, undersigned counsel informed Mr. McCarthy of this fact and requested that the Plaintiff file the Notice by May 25th. See Exhibit 9. Mr. McCarthy responded that the Notice would be filed by this date. See Exhibit 10.

10. In the afternoon of May 25th, undersigned Counsel reviewed the docket entries in this case and realized that the Notice of Voluntary Dismissal had not been filed and, consequently sent an e-mail to Mr. McCarthy inquiring as to whether it would be filed as promised. See Exhibit 11.

11. On May 26th, having received no response to the inquiry and no Dismissal having been filed with the Court Freishtat filed a Motion to Dismiss, or in the Alternative, Motion For Summary Judgment, or in the alternative, Motion for the Court to accept filing of the Notice of Voluntary Dismissal.

12. Thereafter the Plaintiff continued to try to dismiss the case. Eventually, she was successful after she retained new local counsel, who filed a Stipulation of Dismissal with the

Court on June 7th, three weeks after the Plaintiff first promised to dismiss the case and nearly two weeks after the date by which the Plaintiff promised to dismiss the case, *pro se.*

## SUMMARY OF ARGUMENT

Freishtat moves, pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. §1927, for this Court to sanction the Plaintiff and her counsel, Mr. McCarthy and his law firm Diamond McCarthy Taylor Finley Bryant & Lee, LLP (collectively "McCarthy") for their certification, filing and maintenance of the Complaint in this matter, which:

(1)  Contains irrelevant and scandalous factual allegations that are patently and demonstratively untrue and directly conflict with the findings in prior litigation;

(2)  Contains requests for relief that are barred by the applicable statute of limitations based solely on the allegations in the Complaint;

(3)  Contains requests for relief that are barred by the applicable statute of limitations based on facts that were judicially determined by the District of Columbia Court of Appeals;

(4)  Contains causes of action that are obviously defective;

(5)  Was filed for an improper or frivolous purpose; and

(6)  Evinces a failure to conduct reasonable pre-filing inquiry.

Although the Plaintiff ultimately voluntarily dismissed her claim against Freishtat, sanctions are still nevertheless warranted.  First, the fact that the Plaintiff finally dismissed the Complaint did not rectify the filing of such a patently frivolous lawsuit, which also contained unnecessary and slanderous allegations, that had already been adjudicated to be false, regarding attorneys who enjoy prominent reputations in the community. Simply dismissing the lawsuit does not erase the taint caused by the Plaintiff's reckless actions.   The suit with its blasphemous allegations remains on file and available to the public.

Second, because the Plaintiff failed to advise Freishtat of her intent to dismiss the lawsuit until after work was commenced on the filing of a motion and then failed to fulfill her promise to dismiss the lawsuit within the stated time period, Freishtat incurred significant attorney's fees, necessitated by the Plaintiff's irresponsible conduct. The Plaintiff and her attorney, and not Freishtat should bear the cost of these fees.

**LAW ON SANCTIONS PURSUANT TO RULE 11 OF THE
FEDERAL RULES OF CIVIL PROCEDURE, 28 U.S.C. § 1927, AND THE
COURT'S INHERENT POWER**

Rule 11 requires that an attorney[6] sign all pleadings and motions filed with the Court. Before signing any pleading, that attorney has an obligation to ensure than the claims, allegations, and factual assertions have a reasonable basis. *E.F. Hutton Mortgage Corp. v. Equitable Bank, N.A.*, 678 F.Supp. 567, 587 (D. Md. 1988) (noting that the Court will evaluate compliance of Rule 11 under an objective standard). An attorney has a duty to conduct a pre-filing examination of both the facts and the law before instituting legal process. The Rule states, in part:

> **(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . .
>
> (1)  it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)  the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

[6]   The Plaintiff claims to be an attorney in good standing of multiple bars and a graduate of Yale Law School. Thus, the Plaintiff is expected to understand the consequences of pursuing frivolous claims.

>   (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The Motion may be initiated by counsel. Fed. R. Civ. P. 11(c)(1).

Rule 11 sanctions are intended to deter future misconduct by the attorney. *Gordon v. New England Tractor Trailer Training Sch.*, 168 F.R.D. 178 (D. Md. 1996). An attorney may file a complaint to vindicate the substantive rights of his or her client, but not for improper purposes. *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990) ("If a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith . . ."). The Court may thus inquire into the purpose of the filings, in addition to determining whether the filings satisfy the standards of Rule 11. *Id.* (noting that the "[c]ourt must judge the conduct of counsel under an objective standard of reasonableness, rather than assessing subjective intent."). Courts may find that a suit was intended for the bad-faith purpose of harassment if the suit is plainly not supported by existing law. *Williams v. Prince Georges County Hosp. Cent.*, 932 F. Supp. 687, 690 (D. Md. 1996).[7]

Sanctions may also be imposed upon the filing party, in addition to the signing attorney. *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) (upholding district court's imposition of

---

[7] Freishtat recognizes that there is case law in the 4th Circuit that holds that a Rule 11 motion is not appropriate after a case is concluded. *See e.g. Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002). Given the fact that the co-defendants have filed a motion for sanctions, it is unclear whether the case has been "concluded," or whether an exception would apply given the conduct that occurred in this case. In any event, it is Freishtat's position that the conduct of the Plaintiff and her attorney warrant sanctions and the inquiry under Rule 11 as to whether sanctions are appropriate is similar to the inquiry under 28 U.S.C. § 1927 and under the Court's inherent power. The question for the Court is whether their conduct evinced bath faith. If so, the entry of sanctions is warranted.

sanctions against both party and counsel).  As the Advisory Committee on Rules noted, "[e]ven though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client."  Fed. R. Civ. P. 11 advisory committee's notes (citing *Browning Debenture Holder's Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir. 1977)).  Courts will usually not hold a party responsible for filings when that party is not sophisticated in litigation or the sanctionable filings relate to issues of law, rather than fact, which the party did not itself raise.  *See, e.g., Bakker v. Grutman*, 942 F.2d 236 (4th Cir. 1999) (holding that plaintiff, a former television evangelist, should not be sanctioned when he acted entirely on attorney's advice and was not actively involved in suit).  In this case, however, Dr. Olivarius is hardly unsophisticated, as she is an experienced attorney, who after graduating from Yale Law School practiced law in the New York firm of Shearman and Sterling before becoming the General Counsel of the Sarnoff Endowment.  Compl., ¶¶ 9-10.  In addition, as detailed below, the Plaintiff has already litigated these same operative facts on several different occasions and thus has detailed knowledge of the legal issues involved.

28 U.S.C.A. § 1927 (1994) provides that "any attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.  *See also United States v. Camco Const. Co*., Inc., 221 Fupp.2d 630, 634 (D. Md. 2002); *Thomas v. Treasury Management Association, Inc.*, 158 F.R.D. 364, 371 (D. Md. 1994); *Williams v. Family Dollar Services, Inc.*, 327 F. Supp.2d 582, 585 (E.D. Va. 2004). "'Vexatious' conduct involves either subjective or objective bad faith."  *Camico Const. Co*., 221 F.Supp.2d at 634, *quoting Kotsilieris v. Chambers*, 966 F.2d 1181, 1184 (7th Cir. 1992).

A party may establish counsel 'bad faith" by showing "intentional or reckless disregard of the attorney's duties to the court." *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990); *Mortice v. Providian Financial Corporation*, 283 F.Supp.2d 1084, (D. Minn. 2002). The "intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay," is indicative of bad faith. *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir 1986) "Bad faith may also be inferred when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Alphonso v. Pitney Bowes, Inc.*, 356 F.Supp.2d 442, (D N.J. 2004), *quoting D'Auria v. Minniti (In re Minniti*, 242 B.R. 843, 850 (Bankr. E.D. Pa. 2000); see also In re TCI Ltd., 769 F.2d 441, 445 (7th Cir. 1985) ("a lawyer engages in bad faith by acting recklessly or with inference to the law, as well as by acting in the teeth of what he knows to be the law"; *Kapok Mfg Co. v. C&O Enterprises Inc.*, 886 F.2d 1485, 1496 (7th Cir. 1989) (awarding sanctions in part because attorney "demonstrated an attitude of 'file first, research later'").

A Court, in addition to Rule 11 and 28 U.S.C. §1927, has the inherent power to sanction a party or attorney for acting in bad faith. This inherent power was reaffirmed by the Supreme Court in Chambers v. NASCO, 501 U.S. 32 (1991). The Supreme Court noted that

> [i]t has long been understood that 'certain implied powers must necessarily result to our courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.' For this reason, 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' These powers are 'governed not by rule or statue but by the control and expeditious disposition of cases.'

*Id.*, at 44 (citations omitted). Among these inherent powers, is the ability of a court to "assess attorney fees when a party has 'acted in bad faith, vexatiously, wantonly, or for

oppressive reasons.'"  *Id*., at 45-46 (*quoting Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975).  The Court's inherent power can be invoked even if procedural rules exist which sanction the same conduct.  *Id*., at 47.  It order to invoke its inherent power to sanction a party or counsel, the Court must determine that the sanctioned individual engaged in conduct that was tantamount to bad faith.  *Moore v. Keegan Management Company*, 78 F.3d 431, 436 (9th Cir. 1996).

As set forth below, the conduct engaged in by the Plaintiff and her attorney warrants the imposition of sanction pursuant to Rule 11, 28 U.S.C. §1927, and/or the Court's inherent power, in order to hold the Plaintiff and her lawyers accountable for their conduct.

## APPLICATION OF LAW TO THE FACTS OF THIS CASE

It is clear that pursuant to the above-cited case law, the Complaint filed by the Plaintiff in this case warrants the Court imposing Rule 11 sanctions against her and her attorney, as the Complaint is seriously flawed, both factually and legally, evincing both a lack of substantial justification and bad faith on the part of the Plaintiff and her attorney.  A number of these flaws are explicated in Freishstat's Memorandum of Law in Support of the Motion to Dismiss, or in the alternative, Motion for Summary Judgment.[8]  The only question, therefore, is whether the Plaintiff's eventual voluntary dismissal of the claims against Freishtat insulates her (and her attorney) from the imposition of Rule 11 sanctions to rectify the extensive and very real damage and cost caused by her reckless actions.

---

[8]  There are other defects in the Complaint that were mentioned but not pursued in detail in the Memorandum of Law in light of the strength of the statue of limitations argument.  These defects include the fact that most of the significant allegations in the Complain are barred by the doctrine of collateral estoppel due to the litigation that occurred in the District of Columbia related to the Plaintiff's termination from the Sarnoff Foundation and the fact that each of the pled causes of action were missing requisite elements, particularly the RICO claim.  Certainly, these deficiencies can be explored in greater detail if it would assist the Court in ruling on this Motion.  It is believed, however, the lack of substantial justification for the claims contained in the Complaint is a foregone conclusion and the appropriateness of sanctions depends on the impact of the filing of the voluntary dismissal.

It is respectfully submitted that under the facts in this case that the Plaintiff's belated dismissal should not preclude the entry of sanctions.  In the event that the Plaintiff had filed the dismissal prior to May 16th, Freishtat would have honored the promise contained in the April 4th letter to forgo sanctions in exchange for a dismissal with prejudice of the claim.  Not only did the Plaintiff not dismiss the Complaint during this timeframe, but by requesting that undersigned counsel accept service of the Complaint on behalf of Freishtat when she knew, because she was specifically told that Freishtat was working on a response to the Complaint, she gave the impression that she intended to pursue the claim.  It was not until an email dated May 16th, received at 8:13 p.m. (and reviewed the next day) that Mr. McCarthy indicated that the Plaintiff would dismiss the claim.  By this time, Freishtat had incurred significant attorney fees for the researching and drafting of a responsive motion to the Complaint.

The Plaintiff then compounded the problem by consistently promising to get the case dismissed and failing to do so by the promised deadline. These failure occurred despite that fact that undersigned counsel explicitly educated Mr. McCarthy regarding the steps that he need to take in order to accomplish the dismissal.  The final straw was when the last deadline passed without the promised action being taken, Mr. McCarthy neither informed undersigned counsel of a need for additional time nor responded in a timely manner to undersigned counsel's inquiries. Thus, Freishtat acted to protect their interests by filing a response to the Complaint that corrected the legal and factual inaccuracies in the Complaint.

Somebody has to pay for the costs associated with the researching, drafting and filing of the Motion and the equities dictate that it is the Plaintiff and her counsel and not Freishtat.  From the beginning, when Freishtat first learned of the Complaint, the Plaintiff has been warned that the Complaint contains serious factual and legal flaws and that Freishtat would undertake what

ever action was necessary to obtain dismissal of the Complaint, to recover the costs associated with obtaining a dismissal, and seek to deter the Plaintiff, her attorney and other from engaging in similar conduct. Despite these warnings, the Plaintiff failed to act in a timely or responsible manner to mitigate the damage her improvident Complaint had caused.

There is simply no excuse for the inability of the Plaintiff and her attorney to file a dismissal that the Court would accept in a reasonably timely manner. At the time the Plaintiff promised to dismiss the case, she and her counsel were aware that Mr. McCarthy was not licensed to practice law in the United States District Court District of Maryland, that Mr. McCarthy had not been admitted *pro* hoc, that Court had granted the request of Mr. Himeless, her local counsel, to with draw his appearance, and that no one had entered they appearance to replace Mr. Himeless. Consequently, the Plaintiff knew, or should have known that the Court would not accept a pleading filed on her behalf by Mr. McCarthy or Mr. Himeless.

The Plaintiff and her attorney also should have known that there are no circumstances pursuant to which it would have been proper or possible for undersigned counsel to file a voluntary dismissal on behalf of the Plaintiff  Nevertheless, Mr. McCarthy, on several occasions made such a request.  Then, after undersigned counsel consulted with the Clerk's office and determined that the Court would accept a dismissal filed by the Plaintiff, *pro se*, and this information was conveyed to the Plaintiff, she still failed to file a dismissal within a timeframe that was both reasonable and one with which she had agreed.  This failure was the result of gross incompetence, gross indifference, or the desire to continue to inflict damage on Freishtat by delaying the dismissal of the Complaint.  Any of these causes justify the Court entering sanctions.

These actions by the Plaintiff and her counsel are particularly irresponsible given the substance and nature of the Complaint.  Not only are there outlandish personal attacks upon Freishtat in the Complaint, but the Plaintiff also repeatedly referred to the proceedings before an arbitrator related to her termination from the Sarnoff foundation and the judicial opinions that followed those proceedings, two in the District of Columbia Superior Court and one in the District of Columbia Court of Appeals. Yet her Complaint made factual allegations and pursued legal theories that had been specifically rejected by these tribunals.  There is simply no plausible justification for ignoring the prior adjudications.  Moreover, even if there was some legal basis to pursue a legal theory that had previously been specifically rejected by another tribunal and was based on factual allegations that where in direct conflict with prior factual findings made by the same tribunals, the claims were, on their face and based upon the Plaintiff's own averments, indisputably barred by the applicable statutes of limitations.

Most notably, the Plaintiff asserted that she discovered the documents that formed the basis of her claim in March 2001[9], yet she asserted multiple causes of action that had a three-year statute of limitations in a Complaint that was not filed until March 2005.  No legal theory exits that excuses such an untimely filing.  Again, this conduct can only be explained by gross incompetence, gross indifference to the law, or a desire to inflict harm on Freishtat (and the other Defendants) by the filing of a Complaint containing outrageous allegations that she knows does not contain a viable claim.  Sanctions are warranted regardless of which of these explanations are correct.

---

[9] As set forth in Freishtat's Memorandum of Law in Support of his Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, it had been judicially determined that the Plaintiff was on inquiry notice of these documents at a much earlier date.

Finally, and possibly most significantly, Complaint contains allegations directed towards respected professional that appear to be designed more to inflict damage on the reputations of the Defendants than to pursue a legitimate legal claim. The Complaint, in the absence of a shred of cited evidence, accuses Freishtat of the worst conduct an attorney can be accused of – selling out the interest of a client for personal gain. The wild allegations include the claim that Freishtat conspired with the attorneys representing his client's adversary to harm his client's case for the sole purpose of maximizing his own personal financial gain. Unable to find any evidence to support such a scandalous allegation, the Plaintiff fabricated documents, most notably a letter allegedly authored by her that conveniently refuted every basis for her termination that was not received by any of its listed recipients.[10]

The fact that the Plaintiff has voluntarily dismissed the Complaint should not preclude the Court entering sanctions. Not only was dismissal of the case a foregone conclusion, based upon the factual and legal deficiencies in the Complaint, whether the Plaintiff voluntarily dismissed it or not, but the dismissal does not come close to curing the harm caused by the Plaintiff's prior conduct as set forth above. The only way the Court can compensate those that were harmed by the Plaintiff's actions and deter the Plaintiff, her counsel and other from engaging in similar conduct is to sanction the Plaintiff. Thus, at a minimum, the Plaintiff should be required to reimburse Freishtat for the legal fees and expenses that were incurred from May 10, 2005, when work on the Motion commenced to the date the Complaint was finally dismissed, June 7, 2005. Furthermore, the Plaintiff should be enjoined from disseminating the now dismissed Complaint to the general public. See Exhibit 12.

---

[10] As noted by the District of Columbia courts, the existence of this letter is totally inconsistent with the contents of other contemporaneous documents and inconsistent with the Plaintiff's testimony at the arbitration.

Even if the Court concludes that the Plaintiff's ultimate voluntary dismissal of the Complaint shield's her and her attorney from Rule 11 sanctions, it is submitted that the conduct of the Plaintiff and her attorney are tantamount to "bad faith" and thus warrant sanctions pursuant to 28 U.S.C. §1927 and/or the Court's inherent power.  Courts have concluded that sanctions are appropriate where the attorney failed to make a reasonable inquiry into the factual and legal basis of the claim.  Specifically, the Court has awarded sanctions, where an attorney has pursued a case that was clearly time-barred or otherwise meritless. *See e.g*. *Fred A. Smith Lumber co. v. Edidin*, 845 F.2d 750, 752-753 (7th Cir. 1988) (Sanctions were warranted because regardless of which limitations period the court adopts, the plaintiff's claims are clearly time-barred.); *Dries & Krump Mfg v. Intern. Ass'n of Machinists*, 802 F.2d 247, 255 (7th Cir. 1986) (Sanctions were appropriate as "no competent attorney who made a reasonable inquiry into the state of the law . . . could have thought the [pleading] had any possible merit.  He should have known it was time-barred."); *Moline v. Experian information Solutions*, 2004 U.S. Dist. Lexis 21171 (N.D. Ill. 2004)( Sanctions awarded where there was no questions that the plaintiff's attorneys were aware that the suit lacked merit early on; and the defendant explicitly warned him of this fact.); *Skrobacz v. International Harvester*, 582 F. Supp. 1192, 1196 (N.D. Ill 1984) (The Court awarded sanctions because of the continued assertion of the claim in the face of applicable and unimpeachable precedent demonstrating that the claim was time barred, which was "unreasonable and vexatious (and indeed reflected bad faith)").

As set forth above, even a cursory review of the Complaint filed in this case reveals its multitude of factual and legal flaws, most significantly, that even under the Plaintiff's version of events, all of the claims are clearly time-barred.  Even putting aside the obligation of the Plaintiff and her attorney to have investigated the facts and researched the law, which at a minimum

would require a review of the prior judicial decisions referenced in the Complaint, undersigned counsel advised the Plaintiff (through her counsel) in a letter dated April 4, 2005, that the Complaint was factually and legally deficient and that the failure to withdraw it would result in the filing of a motion for sanctions.  See Exhibit 1.  Despite these admonishments, the Plaintiff persisted in pursuing the claim until Freishtat had incurred significant attorney fees.  28 U.S.C. §1927 and the Court's inherent power are designed to deter and compensate the victims of this type of conduct.

WHEREFORE, for the foregoing reasons, Defendants Freishtat, Burke, Mullen & Dubnow, LLC, Freishtat and Dubnow respectfully request that the Court grant their Motion for sanctions, and impose as a penalty their reasonable attorneys' fees pursuant to Rule 11(c)(2), and such other sanctions the Court deems necessary and appropriate.

                                         /s/
                                         _____
                                         Alvin I. Frederick  (Fed. Bar No. 01459)
                                         James E. Dickerman (Fed. Bar No. 10687)
                                         ECCLESTON AND WOLF, P. C.
                                         729 E. Pratt Street, 7th Floor
                                         Baltimore, MD 21202-4460
                                         (410) 752-7474
                                         *Attorneys for Defendants Freishtat, Burke, Mullen & Dubnow, LLC, David Freishtat and Stacie F. Dubnow*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2005, a copy of the foregoing Memorandum of Law was mailed by first class, postage prepaid mail, to:

>James D. McCarthy, Esquire
>Diamond, McCarthy, Taylor, Finley, Bryant & Lee, LLP
>1201 Elm Street, Suite #3400
>Dallas, Texas 75270
>
>Andrew D. Levy, Esquire
>Brown, Goldstein & Levy, LLP
>120 E. Baltimore Street, Suite 1700
>Baltimore, Maryland 21202
>*Attorneys for Plaintiff*
>
>Rodney H. Glover, Esquire
>Attison L. Barnes, Esquire
>Wiley Rein & Felding LLP
>1776 K Street, N.W.
>Washington, D.C. 20006
>*Attorneys for Defendants Daniel Friedman, Joann Ingerwall, William Donelan, Richard Page, Karen Savransky and Dana Boyd*

>        /s/
>James E. Dickerman